IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW J. SANCHEZ,

    Plaintiff,

v.                                                                   2:17-cv-00602-LF

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Andrew J. Sanchez's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 15), which was fully briefed on March 5, 2018. *See* Docs. 17, 21, 22. The parties consented to my entering final judgment in this case. Docs. 6, 8, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by impermissibly picking and choosing from the moderate mental limitations found by treating psychiatrist Dr. Blacharsh, and by failing to properly assess Mr. Sanchez's use of a cane in formulating his residual functional capacity ("RFC"). I therefore GRANT Mr. Sanchez's motion IN PART and remand this case to the Commissioner for further proceedings consistent with this opinion.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background and Procedural History

Mr. Sanchez was born in 1961, graduated from high school, and worked doing maintenance and janitorial work and delivering medical supplies. AR 176, 241–42.[3] He filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 27, 2010, alleging disability due to problems with his right elbow, right knee, and with both ankles. AR 176–89, 241. The Social Security Administration ("SSA") denied his claims initially on December 2, 2010. AR 93–96. The SSA denied his claims on reconsideration on June 14, 2011. AR 102–05.[4] Mr. Sanchez requested a hearing before an ALJ. AR 106. On November 9, 2012, ALJ Barbara Perkins held a hearing. AR 50–84. At the hearing, ALJ Perkins advised Mr. Sanchez that she would issue a favorable decision. AR 82. The case was subsequently reassigned to ALJ Ann Farris, who held a second hearing on November 19, 2013. AR 27–49. ALJ Farris issued an unfavorable decision on December 12, 2013. AR 8–26. On January 13, 2014, Mr. Sanchez requested review of the ALJ's unfavorable decision by the Appeals Council. AR 4–5. On April 10, 2015, the Appeals Council denied the request for review. AR 1–3. Mr. Sanchez filed his first appeal to this Court on June 9, 2015. *Sanchez v. Colvin*, No. 15cv482-SMV, Doc. 1 (June 9, 2015).

After Mr. Sanchez filed his first Motion to Reverse and Remand for a Rehearing, the Commissioner filed an Unopposed Motion to Remand, which the Court granted. *Id.*, Docs. 16,

---

[3] Document 12-1 through 12-14 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] The SSA only sent denials pertaining to Mr. Sanchez's SSI application. At Mr. Sanchez's first ALJ hearing on November 9, 2012, the ALJ noted that there was confusion in the record as to whether he was applying for just SSI, or for both SSI and DIB. AR 53–54. The ALJ noted that there were applications for both SSI and DIB in the file and stated that she would address both. AR 54, 82.

23, 24. On remand, the Appeals Council directed the ALJ to further consider Mr. Sanchez's RFC: to provide specific references to evidence of record in support of assessed limitations, to explain the weight given to the opinions of the state agency medical consultants, to obtain evidence from a vocational expert ("VE"), and, before relying on the VE's testimony, to resolve any conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations ("SCO"). AR 469, 523−24. While his first appeal was pending, Mr. Sanchez filed second applications for both DIB and SSI. AR 523. On March 26, 2016, the SSA issued a favorable determination finding Mr. Sanchez disabled beginning on April 1, 2015 for his DIB claim and June 9, 2015 for his SSI claim. *Id*. The Appeals Council consequently limited the period before the ALJ on remand to the period before June 9, 2015. *Id*.[5]

On December 13, 2016, ALJ Ann Farris held another hearing. AR 489–520. On February 2, 2017, ALJ Farris issued a second unfavorable decision. AR 466–88. At step one, the ALJ found that Mr. Sanchez had not engaged in substantial, gainful activity since February 10, 2009, his alleged onset date. AR 472. At step two, the ALJ found that Mr. Sanchez suffered from the severe impairments of osteoarthritis of the knees and right elbow, obesity, and depression. *Id.* At step three, the ALJ found that none of Mr. Sanchez's impairments, alone or in combination, met or medically equaled a Listing. AR 472–74. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Sanchez's RFC. AR 474–79. The ALJ found Mr. Sanchez had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing, kneeling, crouching, or crawling; occasionally stooping; occasionally

---

[5] In her decision, however, the ALJ stated that she was limited on remand to the period before April 1, 2015. AR 469.

5

reachi[]ng, but no overhead reaching on the right; required a cane for prolonged walking; and limited to simple decisions with few workplace changes.

AR 474–75.

At step four, the ALJ concluded that Mr. Sanchez was unable to perform his past relevant work doing building maintenance, or as a janitor, general laborer, or deliverer. AR 479. The ALJ found Mr. Sanchez not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as counter clerk and [call-out] operator. AR 480. Because this Court previously remanded Mr. Sanchez's case, Mr. Sanchez was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a).[6] Mr. Sanchez timely filed his second appeal to this Court on May 31, 2017.[7] Doc. 1.

**IV.     Mr. Sanchez's Claims**

Mr. Sanchez raises three arguments for reversing and remanding this case: (1) the ALJ impermissibly picked and chose from the moderate limitations assessed by treating psychiatrist Dr. Jill Blacharsh; (2) the ALJ failed to do a function-by-function assessment and, in particular, failed to assess how his use of a cane impacted his RFC; (3) the ALJ erroneously relied on the VE's testimony at step five without resolving conflicts between the VE's testimony and the DOT and SCO. *See* Doc. 15. For the reasons explained below, I find that Mr. Sanchez's first two

---

[6] Mr. Sanchez did not file an appeal with the Appeals Council. However, the Appeals Council identified additional evidence after the ALJ issued her opinion, stated that it would not change the outcome, and stated that no further administrative action would be taken while this appeal was pending. AR 465.

[7] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984 (b)–(d); AR 467. The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

6

arguments have merit, and I remand on those bases.  Mr. Sanchez's third argument is without merit.

## V. Analysis

### A. The ALJ impermissibly picked and chose from the moderate mental limitations found by treating psychiatrist Dr. Blacharsh.

Mr. Sanchez argues that the ALJ impermissibly picked and chose from the numerous mental limitations assessed by his treating psychiatrist, Dr. Jill Blacharsh. Doc. 15 at 16–21. He argues that the ALJ rejected some of the moderate concentration and persistence limitations in Dr. Blacharsh's opinion without explanation. *Id*. at 19. He further argues that the ALJ did not give adequate reasons for rejecting the numerous social interaction limitations in Dr. Blacharsh's opinion. *Id*. at 15−16. The Commissioner argues that "[t]he ALJ's treatment of Dr. Blacharsh's opinion was well-reasoned and supported by the record, and should not be disturbed on review." Doc. 17 at 9–10. For the reasons discussed below, I agree with Mr. Sanchez.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and

8

choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In *Haga*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* The prohibition against picking and choosing outlined in *Haga* also applies to the opinions of treating physicians. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

Dr. Blacharsh was Mr. Sanchez's treating psychiatrist. *See* AR 922–25, 928–31, 934–37, 951–54 (documenting visits between January and June 2015). On June 9, 2015, Dr. Blacharsh completed a Medical Assessment of Ability to Do Work-Related Activities (Mental), which asked her to "consider [Mr. Sanchez's] medical history and the chronicity of findings as from a year prior to initial visit to current examination." AR 772–73. In this assessment, Dr. Blacharsh opined that Mr. Sanchez had numerous moderate mental limitations:

9

Understanding and Memory
- Moderate limitation in the ability to understand and remember detailed instructions;

Sustained Concentration and Persistence
- Moderate limitation in the ability to work in coordination with/or proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods;

Social Interaction
- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to ask simple questions or request assistance;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

Adaptation
- Moderate limitation in the ability to respond appropriately to changes in the work place;
- Moderate limitation in the ability to be aware of normal hazards and take adequate precautions;
- Moderate limitation in the ability to set realistic goals or make plans independently of others.

*Id.*

The ALJ stated that she gave "partial weight" to Dr. Blacharsh's opinion:

Significant weight is given to the portion of the opinion finding slight to moderate impairment in concentration, as well as adaptat[i]on. This is supported by the record. However, [sic] weight[8] is given to the portion finding slight to moderate limitation in social functioning, with emphasis on the slight. A moderate limitation is not supported by the record (Ex. 11F). For example, there were no abnormal psychomotor movements. His speech was spontaneous and coherent with normal, clear, and non-latent content. His thought processes were linear. His mood was mildly dysthymic, and his affect though restricted and [sic] adequately reactive.[9] Reality testing was fully intact. His level of intelligence was average. Further, insight was intact, and judgment was good (Ex. 10F/12).

---

[8] The context suggests that the ALJ meant to say "little weight" here, but the decision itself says only "weight." AR 478.

[9] Again, it's not entirely clear what the ALJ meant to say, but this is an accurate quotation.

10

AR 478.

       The ALJ adopted some of the mental limitations contained in Dr. Blacharsh's opinion. Dr. Blacharsh opined that Mr. Sanchez had only a slight limitation in his ability to make simple work-related decisions. AR 772. The ALJ incorporated this into Mr. Sanchez's RFC by limiting him to simple decisions. AR 475. Dr. Blacharsh opined that Mr. Sanchez had a moderate limitation in his ability to respond appropriately to changes in the workplace. AR 773. The ALJ incorporated this into Mr. Sanchez's RFC by limiting him to "few workplace changes." AR 475.

       The ALJ, however, failed to explain if or why she rejected the other moderate limitations in Dr. Blacharsh's opinion. The ALJ stated that she gave "significant weight" to Dr. Blacharsh's limitations concerning concentration and adaptation. AR 478. But the ALJ failed to either incorporate or explain why she rejected two moderate mental concentration limitations in Dr. Blacharsh's opinion—a moderate limitation in his ability to work in coordination with/or proximity to others without being distracted by them, and a moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. As in *Haga*, "it is simply unexplained why the ALJ adopted some . . . restrictions but not others." 482 F.3d at 1208. This error requires remand.

       The mental abilities needed for any job include "[t]he ability to work in coordination with or proximity to others without being (unduly) distracted by them" and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." Social Security Program Operations Manual System ("POMS") § DI 25020.010, https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited Dec. 19, 2018). Because these

11

abilities are general requirements for all jobs, the ALJ must address these limitations in formulating Mr. Sanchez's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease ability to perform simple or unskilled work because it is a general work requirement); *see also Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007) (remanding based in part on ALJ's failure to discuss a moderate limitation in claimant's "ability to work in coordination with or proximity to others without being distracted by them"). The ALJ failed to adequately address these limitations, and remand is therefore appropriate.

Mr. Sanchez also complains that the ALJ failed to either adopt or adequately explain why she rejected the moderate social interaction limitations in Dr. Blacharsh's opinion. Doc. 15 at 19–20. Dr. Blacharsh opined that Mr. Sanchez had moderate limitations in his ability to interact appropriately with the general public, to ask simple questions or request assistance, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 773. It is unclear what weight the ALJ gave these limitations. *See* AR 478 ("However, [sic] weight is given to the portion finding slight to moderate limitation in social functioning, with emphasis on the slight."). The ALJ considered social interaction limitations as a category, rather than considering each separate mental limitation within that category. *See id.* ("**A** moderate limitation is not supported by the record (Ex. 11F).").[10] The ALJ essentially states that moderate

---

[10] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all the following when assessing a claimant's mental abilities:

social limitations are not supported by Dr. Blacharsh's own record—Exhibit 11F (AR 771−74). In support of the moderate social interaction limitations in her opinion, Dr. Blacharsh noted that Mr. Sanchez was "irritable, isolated, [and] passive." AR 773. The ALJ did not discuss the evidence offered by Dr. Blacharsh in support of the opined social interaction limitations. Instead, the ALJ claimed only that "[a] moderate [social] limitation was not supported by the record," and cited as an example of this lack of record support the summary of a mental status exam from May 2013 wherein Mr. Sanchez showed

> no abnormal psychomotor movements. His speech was spontaneous and coherent with normal, clear, and non-latent content. His thought processes were linear. His mood was mildly dysthymic, and his affect though restricted and [sic] adequately reactive. Reality testing was fully intact. His level of intelligence was average. Further, insight was intact, and judgment was good (Ex. 10F/12).

AR 478. Mr. Sanchez argues that "[i]n her recitation of the record, nowhere does ALJ Farris state how these observations equate to getting along with coworkers or supervisors in a work situation." Doc. 15 at 19. The Court agrees. The cited evidence does not provide an explanation

---

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

for rejecting the social limitations in Dr. Blacharsh's opinion. On remand, the ALJ must either incorporate or explain why she rejected the moderate limitations in Mr. Sanchez's ability to interact appropriately with the general public, to ask simple questions or request assistance, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

### B. The ALJ failed to do a function-by-function assessment and, in particular, failed to assess how Mr. Sanchez's use of a cane impacted his RFC.

Mr. Sanchez argues that the ALJ failed to do a function-by-function assessment of his work-related abilities, as required by SSR 96-8p. Doc. 15 at 21. Specifically, he argues that the ALJ failed to consider the exertional and non-exertional limitations that stem from his use of a cane. *Id*. at 22–23. Mr. Sanchez argues that the RFC is unclear because it does not explain how he can simultaneously "bear weight on his cane" and "lift and carry up to 20 pounds," as required by light work. *Id*. at 23. The Commissioner responds that the ALJ "provided five single-spaced pages of narrative discussion explaining her reasoning" for the RFC and urges the Court to find that the RFC was "sufficiently specific." Doc. 17 at 10−11. For the reasons discussed below, the Court finds that the RFC fails to adequately account for Mr. Sanchez's use of a cane.

Step Four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Id*. (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2. It reflects "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. *Id*. at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven

strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p, 1996 WL 37184, at *3–4).

Light work requires up to six hours of walking or standing daily. SSR 83-10, 1983 WL 31251, at *5–6; 20 C.F.R. § 404.1567(b). Light work also requires lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. *Id*. In the instant case, the ALJ found that Mr. Sanchez "required a cane for prolonged walking." AR 475. The ALJ did not explain what she meant by "prolonged" walking. In fact, the ALJ did not specifically discuss Mr. Sanchez's need for a cane in the RFC findings. The only place the ALJ mentions Mr. Sanchez's need for a cane is in the header section of the RFC, despite the regulations requiring the ALJ to show how the evidence supports each limitation. *See* SSR 96-8p, 1996 WL 374184 at *7 ("The RFC assessment **must** include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

At the hearing, Mr. Sanchez testified that he had been using a cane for about 15 years, and that he didn't go "nowhere without it." AR 501, 509. He testified that he did not use the cane during his three-hour-a-day job doing light janitorial work because he was able to lean on the push broom or dust broom at work. AR 501, 509. He testified that he could walk only about one block, and to walk that distance he had to use his cane. AR 509. He testified that he had difficulty emptying "little light trashcans" after his employer moved the dumpster to the back of the building, because it was difficult for him to walk that distance. AR 512–13. He stated that he uses the cane because his knee locks up. AR 513; *see also* AR 459 (Dr. Durham noted that Mr. Sanchez "ambulated with a cane and his movements were very cautious and slow."); AR 460 (Dr. Durham noted that Mr. Sanchez walked "upright and very stiffly" with a slightly ataxic

16

and modestly shortened gait); AR 462 (Dr. Durham noted that Mr. Sanchez's gait "was very slow" and that he "appeared to be in physical discomfort when he moved at times"); AR 44 (Mr. Sanchez's independent living specialist, Sandra Sandoval, testified that during his visits with her, Mr. Sanchez walked with a cane, and appeared to be a fall risk due to his inability to balance); AR 778 (Mr. Sanchez's mental health provider noted that it was "easy for [Mr. Sanchez] to fall" and that "using a cane causes pain."). Given that the record is replete with evidence that Mr. Sanchez used his cane regularly and needed it to walk for even short distances, the ALJ's failure to discuss the use of the cane is problematic.

It is not clear what the ALJ meant in stating that Mr. Sanchez only needed a cane for "prolonged walking."[11] It is not clear how the ALJ concluded that Mr. Sanchez was capable of walking or standing for up to six hours daily, as required by light work. SSR 83-10, 1983 WL 31251, at *5; 20 C.F.R. § 404.1567(b). It is even more unclear how Mr. Sanchez would be able to perform the lifting requirements of light work—lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds—while using his right, dominant hand to support himself with a cane. Mr. Sanchez testified that he could lift 5 pounds with his right hand and 10 pounds with his left hand. AR 510. If one of his hands was supporting him on his cane, he would be unable to lift the 20 pounds required by light work. The ALJ did not specifically discuss Mr. Sanchez's ability to lift and carry, and certainly did not discuss how he could lift and carry with one arm while using a cane. On remand, the ALJ's "RFC assessment

---

[11] The Commissioner argues that the VE considered the fact that Mr. Sanchez needed a cane for "prolonged walking" and found that he could perform the jobs listed at step five. Doc. 17 at 11 (citing AR 517–18). However, the VE also testified that Mr. Sanchez's use of a cane for ambulating while working would foreclose the jobs she found him capable of performing. AR 519. Given that the ALJ failed to explain what she meant by "prolonged walking" or how she determined how much Mr. Sanchez needed to use his cane, the tension in the VE's testimony is unresolved.

17

must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7.

> C. **There is no conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and therefore the ALJ did not err in relying on the VE's testimony at step five.**

Mr. Sanchez argues that the ALJ erroneously relied on the VE's testimony at step five without first resolving the conflicts between the VE's testimony and the DOT. Doc. 15 at 24–26. Mr. Sanchez argues that his RFC limitation to "occasionally reach[]ing, but no overhead reaching on the right" is inconsistent with the DOT listings for the two jobs that the VE testified he could still perform—counter clerk and call-out operator—both of which require occasional reaching. *Id*. at 25−26. Essentially, Mr. Sanchez argues that his limitation to no overhead reaching is inconsistent with the DOT listings for the jobs cited by the VE, and that the ALJ relied on the VE's testimony without obtaining a reasonable explanation for these conflicts, in violation of SSR 00-4p and Tenth Circuit case law. *Id*. at 24−26. The Commissioner responds that because the DOT does not specifically address a limitation in overhead reaching, "there was no apparent conflict that needed to be resolved," and the ALJ did not err. Doc. 17 at 11–12. I agree with the Commissioner.

Plaintiff's RFC includes a limitation to no overhead reaching on the right side. AR 475. The issue, therefore, is whether the DOT requirement of occasional reaching requires occasional *overhead* reaching with the right side. Reaching means extending hands and arms in any direction. *See* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985). In *Segovia v. Astrue*, 226 F. App'x 801 (10th Cir. 2007) (unpublished), the Tenth Circuit upheld an ALJ's determination of non-disability when the DOT description of a job identified by a VE included frequent reaching, but the plaintiff's RFC included a limitation to only occasional overhead reaching. 226 F. App'x

at 804. The Court explained that the definition of reaching is extending arms in any direction, so "even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching." *Id.* Further, the Court reasoned that "[t]he VE was aware of [plaintiff's] limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications . . . ." *Id.*

The same reasoning applies in this case. Mr. Sanchez's RFC limits him to no reaching overhead on the right side, while the jobs identified by the VE require occasional reaching, but not specifically occasional *overhead* reaching. The VE was aware of Mr. Sanchez's limitation of no overhead reaching on the right side, and still testified Mr. Sanchez could perform the jobs she listed. AR 517–18. As in *Segovia*, the RFC and the DOT requirements are not in conflict, and the ALJ therefore properly relied on the VE's testimony as substantial evidence to support her determination.

Further, the Court in *Segovia* noted that the DOT descriptions of the jobs identified by the VE (cafeteria attendant and ticket taker) "do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching." 226 F. App'x at 804. The same can be said about the jobs identified by the VE in Mr. Sanchez's case—counter clerk and call-out operator. *See* DOT 249.366-010 (counter clerk); DOT 237.367-014 (call-out operator).

In this case, as in *Segovia*, "the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case." *Segovia*, 226 F. App'x at 804 (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided that the

record reflects an adequate basis for doing so. . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.")). Here, the ALJ stated that the limitations in the "direction of reaching" are not addressed by the DOT, "and the testimony regarding these limitations is based upon the vocational expert's experience." AR 480. The Court finds no conflict between the DOT and the VE's testimony. The ALJ provided an adequate basis for relying on the VE's testimony. The Court therefore does not remand on this basis.

## VI. Conclusion

The ALJ erred by impermissibly picking and choosing from the moderate mental limitations found by treating psychiatrist Dr. Blacharsh. The ALJ also erred by failed to properly assess Mr. Sanchez's use of a cane in formulating his RFC. The Court remands so that the ALJ can remedy these errors. The ALJ did not err in relying on the VE's testimony at step five. The Court denies the motion as to this argument.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 15) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent